UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GABRIELA RESENDEZ,<br><br>             Plaintiff,<br>v.<br>SMITH'S FOOD & DRUG CENTERS, INC., et al.,<br><br>             Defendants. | Case No. 2:15-cv-00061-JAD-PAL<br><br>ORDER<br><br>(Mot for Sanctions – Dkt. #1) |

The court held a hearing on Plaintiff's Motion for Sanctions (Dkt. #1-3, p. 19 of 154) on March 3, 2015. Daniel Simon appeared on behalf of the Plaintiff, and Jerry Busby appeared on behalf of the Defendants. The court has considered the motion, Defendants' Response (Dkt. #6), Plaintiff's Reply (Dkt. #9) and the arguments of counsel at the hearing.

## **BACKGROUND**

### I.     **Procedural History.**

This case has a long and tortured procedural history. It arises out of a slip-and-fall at a Smith's grocery store on July 14, 2012. The complaint was initially filed in state court on January 13, 2014, and removed by the Defendants on February 7, 2014, and assigned Case No. 2:14-cv-00201-APG-NJK. Plaintiff filed a motion to remand February 18, 2014, to preserve her right to seek remand once she determined the identity of a Doe employee. After the parties exchanged discovery, Plaintiff filed a motion to amend her complaint to name Ryan Overbey as a Defendant in place of a Defendant Doe employee, and supplemented her motion to remand. Judge Gordon granted Plaintiff's motion to amend, and remanded the case to state court on April 7, 2014. Plaintiff filed her amended complaint naming Mr. Overbey as a Defendant April 8, 2014.

On May 7, 2014, Smith's filed a motion to reconsider requesting that Judge Gordon reconsider his order granting leave to amend and remanding the case. The matter was remanded to state court where the parties remained until January 13, 2015, when Smith's filed a second notice of removal which resulted in assigning the case a new case number and randomly assigning two new judges. Judge Dorsey and I were assigned to this case. I notified the chambers of both district judges of the unusual procedural posture of this case and that it has been removed for the second time and assigned a new case number and new judges. In an order entered March 2, 2015, Judge Gordon denied Defendants' motion for reconsideration of his prior order granting leave to amend the complaint to add Mr. Overbey as a Defendant and remanding the case to state court. Plaintiff's Motion to Remand (Dkt. #19) was filed under this case number February 12, 2015. The briefing period on the motion to remand filed under this case number has not yet run.

Two motions for sanctions presently were filed in state court prior to Defendants' second notice of removal. The responses and replies were filed after the notice of removal. Neither side applied for a stay of discovery or other proceedings while the motion to remand was decided on the merits. Accordingly, the court set these two motions for hearing to resolve the parties' disputes to allow the parties to complete discovery to get this case to ultimate resolution either here or in state court.

**II.     Plaintiff's Motion for Sanctions (Dkt. #1-3, p. 19 of 154).**

On December 17, 2014, while this case was still in state court, Plaintiff deposed Smith's Nevada Rule of Civil Procedure 30(b)((6) designees on various subjects including the use of surveillance at the store involved in this accident on the date of the incident. Smith's produced a Rule 30(b)(6) designee who testified: (1) that there were video surveillance cameras covering the area where this accident occurred; (2) the cameras were functioning properly on the date of the accident; (3) the cameras would have captured Plaintiff's accident; (4) the cameras would capture prior inspections and sweeps of the area where Plaintiff fell; (5) the cameras would have captured Plaintiff walking into the store, the fall, the investigation, Plaintiff walking after the fall, the identity of persons spilling the water prior to the fall, the employee performing the

1 inspections and Plaintiff leaving the store; (6) Defendant's policy and procedure is to preserve surveillance video one hour prior and one hour subsequent to an incident; (7) the person responsible for reviewing and preserving the surveillance video for this accident could not recall whether or not she had actually reviewed and preserved the surveillance video; (8) no surveillance video has been produced; (9) Smith's does not have any video of the accident; and (10) Smith's does not have a satisfactory explanation for the missing evidence.

Based on this testimony, Plaintiff seeks sanctions under Nevada law for failing to preserve and destroying relevant evidence. Plaintiff argues that the only just remedy is to strike Defendants' answer as to liability, and that any lesser sanction would reward Smith's for destroying the evidence that would conclusively prove the Plaintiff's case. Otherwise, Plaintiff argues, Smith's will be able to hire experts and "present a fraud upon the jury in hopes of confusing them and suggesting that Plaintiff has not met her burden to prove the case." Plaintiff contends that Smith's is operated and overseen by Kroger Company, a national company that has stores throughout the country. It is a highly sophisticated company and striking Smith's answer will send a message not only to the Smith's store involved in this case, but to future litigants who engage in similar tactics. Citing *Bahena v. Goodyear Tire & Rubber Company*, 126 Nevada Adv. Op. 26, 235 P.3d 592 (2010), *Young v. Johnny Ribiero Building*, 106 Nev. 88, 92 P.2d 777 (1990), and *Bass-Davis v. Davis*, 122 Nev. 442, 134 P.3d 103 (2006), Plaintiff argues that the court should grant Plaintiff's motion to strike Smith's answer.

Defendants Smith's Food & Drug Centers, Inc. and Ryan Overbey filed a Response to the motion (Dkt. #6) which represented to the court that Smith's did not receive notice of a potential legal action until more than a year after the slip and fall. Specifically, the response stated that the slip and fall occurred on July 14, 2012, and Smith's did not receive notice of a potential lawsuit until July 24, 2013, when Plaintiff contacted Smith's through her counsel. During oral argument counsel for the Defendants acknowledged that this was not true. Plaintiff's reply brief attached a copy of the letter Plaintiff's counsel sent to Smith's as Exhibit 12. The letter is dated **July 24, 2012**, contrary to the representations defense counsel made in the response.

The written response acknowledges that video surveillance of the incident was not preserved and has not been produced. However, Defendants argue that although Smith's policy requires preservation of video surveillance of accidents and incidents, it does not insure that an employee will follow policies and procedures. The opposition also argues that this is not a perfect world and the rules are not always followed. The courts have well-established case law addressing the failure to preserve. Defense counsel contends that "Plaintiff overlooks years of spoliation of evidence law" in requesting that the Smith's answer be stricken. Defendants argue that "it is clear that Smith's is not liable for the lack of video evidence and no sanctions are appropriate in this matter."

The response also argues that the Plaintiff's motion for sanctions should be ignored by this court because the same arguments were made in a countermotion Plaintiff filed in state court before Smith's removed the case for the second time. Smith's argues this motion would have been decided by the state court's Discovery Commissioner if Smith's had not removed this case, and having two hearings in front of different judges "could lead to chaos and confusion as the results may or may not fall in line with each other."

Alternatively, Smith's argues that federal courts sitting in diversity apply federal law when addressing issues of spoliation of evidence. Under federal law, a party cannot commit spoliation of evidence unless it is on notice that the evidence was potentially relevant and that litigation was likely before the evidence was destroyed. Smith's relies on an unpublished decision in this district in a case filed against it, *Demena v. Smith's Food & Drug Centers, Inc.*, 2:12-cv-00626 2012 U.S. Dist. Lexis 129024, *5 (D. Nev. Sept. 10 2012). There, the court held that in a premises liability case, a duty to preserve relevant evidence is created when a report is completed at the scene and the Plaintiff is transported out of the business by emergency medical personnel. However, Smith's argues that in this case, it had no notice beyond a mere possibility that litigation might arise out of Plaintiff's incident because Plaintiff was not taken from the store by ambulance.

The opposition argues that Smith's did not "destroy" any evidence and did not lose any evidence with a culpable state of mind, and therefore Plaintiff's motion for sanctions should be

denied. Defendants conclude their response by arguing that if Plaintiff had been taken from the store by ambulance, "or sent Smith's a letter soon after the accident, there may have been sufficient evidence to trigger spoliation." However, "based on the evidence as presented by both parties, there was no evidence of probable litigation and Smith's should not be subject to sanctions for allowing the evidence to be recorded-over."

Plaintiff's reply argues that Smith's destroyed video surveillance footage and reiterates the testimony of Smith's witnesses outlined in the original motion. Plaintiff contends that the evidence is clear that Smith's had video surveillance that would have captured the subject evidence, but failed to preserve it. Smith's Rule 30(b)(6) designee, Marie Moser, testified that it is Defendants' policy to review video surveillance for all incidents, and if there is video of the incident to preserve it and send it to Smith's third-party claims administrator, Sedgewick. Smith's policy is to review the video within four days of the incident and to preserve surveillance for an hour prior and after the incident. However, Ms. Moser testified that while she was responsible for reviewing and preserving the video, she had no independent recollection of doing so, even though the cameras would have potentially captured the incident involved in this case, and any prior inspections, including the source of the water that caused the fall. As it is clear that Smith's policy was to preserve video of the incident, that there could have been video of the incident and Smith's failed to preserve it, Plaintiff is entitled to sanctions under Nevada cases cited in the original motion and reply.

Plaintiff argues that Nevada law applies because Judge Gordon's earlier order remanding the case to state court remains in place and the Nevada state court has subject matter jurisdiction over this case. The second removal is defective and improper, and thus the court should apply Nevada law in assessing sanctions. In *Young v. Johnny Ribiero Building,* 1069 Nev. 88, 92 P.2d 777 (1990), the Nevada Supreme Court identified eight factors the court must consider when determining if dismissal with prejudice is appropriate as a discovery sanction. The Nevada Supreme Court has made it clear that the lower court has discretion to enter sanctions against a party who destroys material evidence to the detriment of other parties, and that the severe sanction of striking an answer on liability has been upheld. Plaintiff argues that this court should

1  intervene to remedy the harm and that the only reasonable and just remedy is to strike
2  Defendants' answer as to liability.  Any lesser sanction would reward Smith's for destroying
3  evidence that would conclusively prove Plaintiff's case.

4  Alternatively, Plaintiff argues that even if federal law is applied, sanctions against
5  Smith's for destruction of evidence is appropriate.  Plaintiff concludes that Defendants' attempt
6  to re-litigate this matter in a different federal court is improper and a violation of Judge Gordon's
7  order of remand.  However, if this case does proceed in this court, the motion for sanctions
8  should be granted.

9  During oral argument, counsel for Defendants conceded that Smith's failed to preserve
10 relevant evidence.  Defense counsel spoke up to correct the Defendants' response.  The letter of
11 representation was sent July 24, 2012, to the store where the accident occurred to the attention of
12 the Risk Management Department.  Defense counsel also conceded that sanctions were
13 warranted, but argued dispositive sanctions were not.  Defense counsel suggested that a
14 rebuttable presumption and combination of evidence preclusion sanctions might be appropriate.
15 However, he was unable to articulate what evidence preclusion sanctions the court should
16 impose.

## DISCUSSION

18 Spoliation is the destruction or significant alteration of evidence, or the failure to preserve
19 property for another's use as evidence in pending or reasonably foreseeable litigation.  *United*
20 *States v. Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002) (*citing Akiona v. United*
21 *States,* 938 F.2d 158, 161 (9th Cir. 1991)) (a party engages in spoliation "as a matter of law only
22 if they had 'some notice that the documents were potentially relevant' to the litigation before they
23 were destroyed"); 7-37A *Moore's Federal Practice – Civil* § 37A.55.  A party must preserve
24 evidence it knows or should know is relevant to a claim or defense of any party, or that may lead
25 to the discovery of relevant evidence.  *Moore's* at § 37A.55; *see also United States v. Kitsap*
26 *Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002); *In re Napster*, 462 F.Supp.2d 1060, 1067
27 (N.D. Cal. 2006) (*citing Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556-57
28 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to

preserve evidence which it knows or reasonably should know is relevant to the action"). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster,* 462 F.Supp.2d at 1067 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*, 462 F.Supp.2d at 1066 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Courts may sanction parties responsible for spoliation of evidence in a variety of ways. First, a court may instruct the jury that it may draw an adverse inference to the party or witness responsible for destroying the evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Second, a court may exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. *Id.* at 1329. Third, the court may dismiss the claim of the party responsible for destroying the evidence. Dismissal, however, is only appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir, 2006) (*citing Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995). Before imposing harsh dispositive sanctions, a court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manage its docket; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions. *See Leon,* 464 F.3d at 958 (*citing Anheuser-Busch*, 69 F.3d at 348).

Lastly, the court may award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 961. Before awarding such sanctions, however, a court must make an express finding that the sanctioned party's behavior amounted to "bad faith." *Id.* A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Where the court finds a party has acted in bad faith, any award of attorney's fees must be reasonable. *Id.*

The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (*citing United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same).

I find that Smith's spoliated relevant and discoverable evidence and that sever sanctions are warranted. I also find that Smith has engaged in bad faith by delaying and disrupting these proceedings by taking untenable positions in it written papers which are patently false.

As an initial matter, counsel for Defendants is admonished for filing a response which misrepresented the date Plaintiff sent a letter of representation to the attention of Smith's Risk Management Department at the store where this slip and fall occurred. Smith's written response argued that spoliation sanctions were not appropriate because it did not lose or destroy evidence after being placed on notice of potential litigation. The response told the court Smith's did not receive the letter of representation for more than a year after the accident. In fact, Smith's received the letter ten days after the accident. The court finds this misrepresentation particularly egregious in this case because the Plaintiff attached Smith's privileged document log as an exhibit to the related motion to compel and for sanctions set for hearing the same day. The privileged document log was attached to Defendant Smith's response to request for production which the certificate of service indicates was served on Plaintiff December 8, 2014. The privilege log withheld eight pages of computer notes/emails dated from **July 14, 2012** – January 22, 2014 (emphasis supplied). The privilege asserted was "**Anticipation of Litigation**" (emphasis supplied). The discovery responses were signed by Jerry S. Busby, the same lawyer who signed the opposition to this motion which was filed more than a month after the discovery responses claiming privilege for documents dating back to July 14, 2012, was served on counsel for Plaintiff.

The response also misrepresented the testimony about whether the video surveillance system in the store would have captured Plaintiff's fall. The response contains a section called "Factual Clarification" which stated "Smith's had functioning cameras that *may have* captured the incident as well as any inspections prior to the incident." (Emphasis in original). Excerpts of the testimony of store manager Jessica Iverson were attached to Plaintiff's reply. *See* Exhibit 11 to Plaintiff's Reply (Dkt. #9). Ms. Iverson testified that the cameras in the area of this incident may have been moved a foot or two one way or the other for maintenance or remodel purposes since the date of the incident. Iverson Transcript, 53:12-23. However, she also testified that, to the best of her knowledge, the area coverage would not have changed. 53:24-54:1. Cameras are trained on the checker and cashier for cash reasons. "It's all about the cash." 54:2-10.

She initially testified that she did not know whether the cameras covered the area where the Plaintiff fell "for that particular date." 54:15-16. However, she also testified that the cameras would have covered a 100 foot radius in the area where the Plaintiff fell although there may have been things on the floor or fixtures that could obscure view. 54:15-25. Ms. Iverson understood that Plaintiff fell somewhere in the front of Checkstand 4. 55:19-24. She did not know one way or the other whether the incident was captured on camera on the date of the incident. 55:25-56:4. However, before testifying she went to the cameras to see what could have been caught. 56:10-16.

Later in her testimony. Ms. Iverson again stated that she had reviewed the "current cameras" before testifying. 118:6-9. The following exchange occurred:

**Q:    Yeah. Counsel asked you whether the fall would have been captured on that video**.

        Mr. Cramer:    Objection.

        Mr. Simon:    Do you remember that?

        The Witness:    Yes. He did ask me that question.

By Mr. Simon:

Q:    Okay, and you replied what?

**A:    I said yes, it would have captured a fall, yes. . .**

9

1  Q: So—but you went on to say that the floor itself could not be captured; Right?
2  A: Correct. There's different variables, yes.

118:9-119:2. She went on to testify that from her current view of the camera location at Checkstand 4, one could not see from the knee down because of where the camera is positioned. Other cameras show the alley which would show someone walking, and that certain parts of the floor could be seen in the alley, but not directly in front of the checkstand. 119:3-120:5. The camera would show whether someone brought something that had water falling off of it. 120:9-14 it would also show the location of the manager in front of the Checkstand 4. *Id.* 17-21.

Smith's arguments that this court should not decide the motion for sanctions because it was originally filed in state court and would have gone to the state court discovery commissioner are nonsensical, and inconsistent with the parties' joint statement regarding removal. Smith's removed this case depriving the state court of an opportunity to decide the matter on the merits. Once a case is removed, any orders of the state court remain in effect unless successfully challenged in this court, and this court must address any undecided matter. This motion and a related motion to compel and for sanctions were identified in the parties' status report concerning removal as matters this court needed to decide. "At present there are several motions listed below that were originally filed in state court and are now pending before this court…. " (Dkt. #20). Both motions set for hearing on March 3, 2015 are on the list the parties provided.

I also categorically reject Smith's arguments in its written opposition that spoliation sanctions are not required because this is not a perfect world and employees do not always follow policies. A failure to follow internal policies and procedures does not, in and of itself, amount to spoliation of evidence. However, contrary to Smith's arguments in its written opposition, Smith's was on notice that Plaintiff had retained counsel to pursue a claim for damages resulting from personal injuries she sustained in the store on July 24, 2012. This was ten days after the accident, not more than a year after the accident as the response claimed. Additionally, Smith's privileged document log withheld documents beginning on July 14, 2012, the day of the accident on the grounds the documents were prepared in anticipation of litigation.

1    Mr. Busby spoke up to correct the Smith's misrepresentation about the date the letter was
2    sent during oral argument. However, the court has serious doubts about whether the record
3    would have been corrected if counsel for Plaintiff had not attached not only a copy of his July
4    24, 2012, representation letter, but proof of facsimile transmission to his reply. Counsel's false
5    statements in the written response display the same lack of appreciation for counsel's legal duty
6    of candor to the court that his client shows for its legal obligations to preserve relevant evidence.
7    There is no question that Smith's was on notice of a potential lawsuit arising out of the Plaintiff's
8    slip and fall ten days after the accident. There is no question that Smith's identified documents
9    dated beginning July 14, 2012, in its privileged document log. There is no question that Smith's
10   had a duty to preserve relevant evidence, including video surveillance cameras capturing the area
11   of the fall, the fall itself, and surveillance footage which would explain how the substance got on
12   the floor as well as Smith's claim that its employee had swept the area twenty minutes prior to
13   the fall. Smith's failure to preserve destroyed relevant evidence.

14   During oral argument, counsel conceded that spoliation occurred and sanctions were
15   warranted. He suggested an adverse inference instruction and some combination of evidentiary
16   preclusion sanctions, but did not articulate what type of evidence should be precluded. I find that
17   an adverse inference instruction is appropriate. The jury should be instructed that: Smith's had a
18   duty to preserve relevant evidence, including video surveillance footage described in this order;
19   Smith's had a policy to preserve video surveillance one hour prior and one hour subsequent to
20   the accident, but failed to follow its own policy; the evidence was destroyed when the video
21   surveillance tape was overwritten and that the jury may infer that Smith's failed to preserve and
22   destroyed evidence because the evidence would be favorable to the Plaintiff, and unfavorable to
23   the Defendants.

24   I also find that Smith's should be precluded from introducing evidence that its employee,
25   Mr. Overby, conducted a sweep of the floor in the area where the accident occurred twenty
26   minutes prior to the accident. Because Mr. Overby has been individually sued, and had no
27   control over Smith's failure to preserve video surveillance evidence, this order will not preclude
28   Mr. Overby from testifying about his recollection of what he did or did not do on the date of the

11

incident. However, Smith's shall be precluded from introducing any documentary or other evidence to support its claim that Overby swept the area twenty minutes prior to the incident. Finally, the court will impose an evidentiary sanction of precluding Smith's from denying that a substance on the floor caused the Plaintiff to fall.

## **CONCLUSION**

Smith's had a duty to preserve evidence it knew or should know was relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. Smith's had notice that Plaintiff had retained counsel and intended to pursue a claim for personal injuries ten days after the fall. Its own privilege log suggests it anticipated litigation in this case on the date of the accident. It failed to preserve relevant evidence and may not profit from its destruction of evidence. Depriving a litigant of relevant evidence undermines the integrity of judicial proceedings and the purpose of a trial which is the search for truth. Smith's arguments that this is not a perfect world and employees do not always follow policy represent a cavalier disregard of its legal preservation duties.

For the reasons stated,

**IT IS ORDERED** that:

1. An adverse inference instruction and evidentiary sanctions described in this order, are imposed.
2. Counsel for Smith's is admonished for the false statements made in the written response to this motion.

DATED this 16th day of March, 2015.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE